Good morning. Please be seated. We are ready for argument in our first case, Mr. Wren. May it please the Court, my name is Peter Wren. I represent Appellants M.D. and his mother, Melody Shuler. This is not a case about simple teasing among children, but rather, as the District Court recognized, a case alleging intolerable harassment that no student should ever have to suffer. The District Court erred, however, in holding that this harassment, which included calling a six-year-old the N-word and taunting him as gay, could not plausibly support any claim for discrimination as a matter of law. It is well established that discrimination on the basis of one's failure to conform to sex stereotypes constitutes a form of sex discrimination, especially after the Supreme Court's decision in Pricewaterhouse v. Hopkins. Title IX protects a male student who fails to measure up to his peers' beliefs about how boys should behave. Plaintiff alleges that he displayed qualities that, had he been a girl, would have been unobjectionable, but because he was a boy, made him the target of harassment. That is sex discrimination, plain and simple. The District Court, however, misconstrued the complaint as plausibly supporting only harassment based on perceived sexual orientation. Sexual orientation harassment does not exist in a mutually exclusive fashion with harassment based on one's failure to conform to sex stereotypes. To the contrary, these two forms of harassment often can and do coexist, and they go hand in hand. The reality of bullying is that a student may be harassed both because of his perceived sexual orientation and also his failure to conform to sex stereotypes. This case presents a classic example of how that can happen. A boy who isn't aggressive, refuses to engage in physical altercations, and is academic as opposed to athletic interests, is taunted as both gay as well as bitch. Now, defendants argue that the fact that someone is called gay does not necessarily relate to their gender, and that sometimes it can be another form of name-calling. But that is quintessentially a factual issue, and it is inappropriate to resolve that dispute in defendants' favor, particularly at the pleading stage. Let's assume that Price Waterhouse gets you into a Title IX recognizable claim. The second part of that, though, would be the deliberate indifference. Talk about that a minute. Absolutely. The complaint alleges an array of conduct from which it could be reasonably inferred that deliberate indifference was shown by the school officials once they knew of the harassment. And that's drawn from a number of allegations. First, the school officials failed to take the most preliminary of steps in responding to harassment, which is simply to investigate what happened and ask the victim of harassment, who were the perpetrators? Who did this to you? If this doesn't constitute deliberate indifference, it's difficult to imagine what would. And they failed to do so, I should note, for both the racial harassment and the sex-based harassment. Second, school officials failed to discipline any of the harassers responsible for the harassment. And the principal agreed, with respect to the racial harassment at least, that discipline was in fact warranted. And we're not quibbling here over something as trifling as the number of hours of detention assigned. We're talking about the total absence of discipline in response to harassment that could plausibly be seen as severe or pervasive. And it's notable that the school also did not implement non-disciplinary measures, such as separating the harasser from the victim, for example, that could have helped reduce the likelihood of harassment reoccurring. Third, it is highly relevant that even other school board officials, employees, felt that something had gone wrong here. If there is a bullying specialist on hand, it is troubling to say the least that he was not notified at any point during the student's enrollment that this harassment was going on. And he himself admonished proper steps were not taken. I should have been notified earlier. And in fact, he wasn't notified until the harassment became so intolerable for the plaintiff that it ultimately forced his withdrawal. In Baynard, this court held that deliberate indifference could be found, even where the principal had contacted the school board's personnel director regarding a teacher suspected of misconduct. Here, the facts are even stronger, because the principal did not contact the bullying specialist at any point during the plaintiff's enrollment. Does it make any difference that the teacher and the principal didn't hear any of this harassment or name-calling? It doesn't, Your Honor, and there's good reason for that, because it is often the case that school officials will have to learn of harassment through someone else who is the percipient witness, including the victim or maybe the parents. It will rarely be the case that a principal is actually a percipient witness to every single act of harassment in the school. They have to rely upon other people who were percipient witnesses. And here, they failed to interview the plaintiff regarding the facts of the harassment and who had perpetrated it. Well, wouldn't that take you down a slippery road if there's just an allegation made and there's no cooperation about it? Then the bullying parents would likely bring a lawsuit, wouldn't they? Well, I think that's the importance of conducting an investigation, and there certainly is a duty to investigate, which the complaint alleges never happened here. So we aren't in a situation of where the principal disagrees after completing an investigation that harassment, in fact, occurred. In fact, we know that the principal thought that discipline was appropriate in response to the racial harassment. So I don't think that the concern about an investigation that leads to a different finding than the one reported by the parent or the student is at issue in this case. It's also notable that in addition to the failure to notify the bullying specialist, the complaint also alleges that the school board failed to train school officials on how to handle and respond to bullying. And that's supported by the fact that the principal and the vice principal were unable to articulate what the bullying policy entailed when asked. And racial harassment, the complaint alleges, has been brewing for years at this elementary school, and yet no adequate response has been undertaken. Well, in fact, the complaint alleges that the vice principal did speak with the students. I understand that this is a point of confusion between the parties, but the complaint fairly read does not allege that the vice principal in fact spoke to the harassers. It alleges that he claims that he did. But we know from the plaintiff that he was never asked by the vice principal who the identity of the harassers were. And so it is certainly reasonable to infer that that was a misrepresentation on the part of the vice principal. And even if we set that to one side, we know that there was no discipline actually ever doled out. That was confirmed by both school officials. So the complaint alleges that there was no investigation, and certainly everyone agrees that there was no discipline in response to the harassment. Now, the district court disregarded all these factual allegations for the sole reason that the plaintiff ultimately withdrew from school. And the district court viewed that as essentially tying the school officials' hands. Mr. Wren, if I may, take you back to a slightly different issue in this case, which actually dovetails with the last few questions you've gotten from Judge Floyd and Judge Duncan. We're here making sense of a complaint filed, based on this record, by a non-attorney parent on behalf of her child. And the law in this circuit is fairly clear, I think, that a non-attorney parent cannot represent his or her child in federal district court. And indeed, somewhat surprisingly, I think, to me at least, the district judge just never even mentions that principle of law. And it's only, as I understand the record, when the appellees appearing for the first time in court here at this level point out this settled principle of law in this circuit that it's brought to anybody's attention. And so the questions that my colleagues have asked you, asking you to make sense of this complaint, it seems to me runs dead into that principle, namely that a parent who is not an attorney is not authorized to represent his or her child in federal district court. And so why are we here, and I guess specifically why are you here, as you did in your brief, insisting that we should decide this case on the basis of a complaint that, as you responded to Judge Duncan a few minutes ago, you disagree with certain interpretations of the complaint. Judge Duncan has a perfectly plausible interpretation of the complaint, it seems to me. Isn't that the very reason we don't permit non-attorney parents to represent their children? And so my bottom line is, why shouldn't we vacate and send this case back to the district court with instructions that either counsel enter an appearance on behalf of the child within some given period of time with leave to amend the complaint, or the complaint gets dismissed without prejudice? So that's a long-winded prelude to a very short question, but could you address that? Because you actually are asking this court to decide this case. Absolutely, Your Honor. We think that this court should decline defendant's invitation to create a rule that the absence of counsel for a minor at the district court forever condemns his claims to dismissal and cannot be cured on appeal. No, I'm sorry, I don't mean to interrupt, but it wouldn't be with prejudice. It would absolutely be a vacater and remand to permit counsel to enter an appearance. Now, I have to say in response to your, and I accept your response, you have not represented to us, you will represent this minor if this case goes back. And I don't want to put you on the spot or your organization, and to be sure, the Eastern District of Virginia has some very stringent practice requirements and admission requirements, although they do permit pro hoc vici admission. So even if you win here, okay, let's assume we were to vacate, what would that accomplish? Because MD's mother can't represent him in the district court. I would say that you hit the nail on the head when you said, what would that accomplish? Because vacating the district court's decision without addressing its reasons for why it felt it was a fatally flawed complaint that failed to state a claim will inevitably lead to that district court judge saying the exact same things over again about why the complaint failed to state a claim. I don't see how you can possibly say that if you accept, as I think you have to, my suggestion that a lawyer who comes into this case at the district court level, 100% certainty would file an amended complaint. 100%. You wouldn't proceed in this case on this complaint that's been filed? And that's not a question. That's an assertion. You wouldn't. No lawyer would. No lawyer would have filed a complaint in this fashion. No reasonably competent lawyer. I took from your answer to the question previous is that you view the fundamental flaw here as being the district court's misinterpretation of the law, which you would run into again. That is absolutely correct, Your Honor. If the district court views sex stereotyping as not an actionable form of sex discrimination, that is an error that only this court can address before the complaint can go forward. And it's notable that the reasons... But what about Judge Floyd's question? He moved to the second criterion, deliberate indifference. The district court didn't say deliberate indifference isn't the standard. The district court said there's no sufficient allegation here of deliberate indifference. I see that my time has expired. If I may answer the question. Judge Duncan, please. The problem is that the district court viewed the fact the plaintiff withdrew, which is not a pleading defect. That is just a fact that is true and out there in the record, and it will be in any amended complaint. That was the fatal flaw to the complaint. The sheer fact that he withdrew meant that there could not, as a matter of law, be deliberate indifference. Why do you say an amended complaint absolutely has to include the allegation that he withdrew? Who says that has to be in the amended complaint? It is the essential factual spine of the case. He was a student at this particular elementary school from January until April. Those are incontrovertible facts that would have to be included in any complaint because it's essential to understand what is the scope, what is the timeline, what is the time frame of the events that we're evaluating. And if the district court was wrong on that point, then only this court can correct that error. Thank you. Thank you very much, Mr. Gwynn. May it please the Court, my name is Jim Gwynn. I'm here on behalf of the school board and Principal Cruz and Vice Principal Bowser. It's not lost upon me that we're in a situation where the district court has declared that the law in this circuit does not support the cause of action that is pled. And I think that's the first prong. The second prong, obviously, is that the court found that there was no deliberate indifference. Well, we could do two things. Dismiss the Title IX claim without prejudice based on the factual scenario. But as to Title VI, it seems to me there would be a dismissal on a legal basis which would cause it to be dismissed with prejudice. I agree, Your Honor. I agree. But the problem that we have, and I think this is what the end of the preceding argument sort of highlights, is this. We are running afoul of the old law school truism about bad facts making bad law. So we're asking what's happening here is the plaintiff is asking this court to essentially find that there is the discrimination that the district court said didn't exist with regard to sexual orientation on a rather flawed, and I think that's being charitable, complaint. And in fact, one of the reasons we brought up Myers and one of the reasons we said that this should be considered by the court was this is the sort of thing that needs to be decided at the district court level. And it has to be decided upon a complaint that we don't come up here and say, well, we think the assistant principal, well, it seems the assistant principal did this or I read the complaint this way and I read the complaint this way. Are you asking us to send it back to the district court? Under Myers, that appears to be the resolution that will allow us to address this issue in a more complete way, I think, Your Honor. You're talking about the Title IX claim? Yes. Okay. Yes. And, you know, I guess... I think that's an honorable answer, Mr. Quinn. Well, it... I really do. You know, this... to me, that the appellant is here asking us to decide it on the basis of a flawed complaint and you're asking us, and I take no... I mean, I completely adopt Judge Davis' characterization, but it does seem as though you have morphed into the other counsel. That Mr. Wren actually doesn't want us to send it back to make sense of the complaint and you do is unprecedented in my experience. Well... But you wouldn't be sending the Title... Not the Title VI, just the Title IX. Right. Just the Title IX. Right. And I'm not sure I know how to answer that. I don't think I've ever been unprecedented in this court, Your Honor. I, too, admire that. The complaint, fairly read, would seem... at least on the Title IX claim, to be inartfully pled. Not on the Title VI claim, but on the Title IX claim, and the fact that you are comfortable with having it and having an amended complaint filed would seem to address a significant concern. It... Now, to be honest, I don't think there's any complaint that could be filed that can establish the point of law that the appellant seeks to have established. On Title IX. Right. It's simply not the law in this circuit. But it does seem to me that before we go down the road to a decision on that issue, that what we need to do is make sure that the complaint that we're deciding that issue on is one that everybody will be able to stand in front of this court probably a second time and say, here we are, here is what the facts are, and this is why this cause of action doesn't exist. Because otherwise, realistically speaking, you're probably going to send us back anyway. Either because... It was a nullity anyway, because the parent can't represent the child in that situation. It's interesting, on that point, that you haven't addressed the very large exception that Myers leaves. In the case of a child who is represented capably on appeal and is asking that the case be decided, as Mr. Wren is. So it would seem to me that Myers doesn't doom your complaint because it creates a situation that is tailor-made to the facts before us. I was on the panel in Myers. I understand. And I think there are a couple of issues that grow out of that. One is, you have a situation where what's being asked of this court on brief in a number of different places is to give some leeway to the pro se filing that occurred in the district court. To give some leeway, because it was pro se, in a situation where a pro se filing is a nullity. So you're essentially being asked to give some credibility or some leeway, as the court has traditionally done with pro se cases, in a case where you can't be pro se. You're very comfortable with your facts on remand. Yeah. Yeah. You know, I'm comfortable with them today. I mean, I'm not suggesting to the court that that has to be done. But my concern is that if we don't stop here, let's say, and we end up somewhere else, that the same issue is going to arise with regard to what the facts are. And doggone it. Where else would you end up? I'm sorry to interrupt, but just curious. Well, there is another court. I'm cheating. It's kind of hard to think of that as you're standing here. But nonetheless, there is that. And I think if that is the case, and look, this is, again, as I said earlier, it's not lost on me that this is a timely issue. This is an issue that is going on. And the Norfolk Division and others, there are all kinds of things going on in this area of the law. And we're in a situation where the court is being asked to essentially read into Title IX, something that's not there, by interpreting it in a different way or by interpreting it more broadly. And we're going to do that on a flawed complaint. And I go back again. I'm just concerned that from the development of the law standpoint that that is the sort of thing that leads us down the road to, and with all due respect to the court, sort of a regretful decision because we wish we had better facts. We wish we knew what the facts were. Not only a more fair decision for the Richmond School Board to make sure that we essentially hold on to our judgment, I guess, but also to be fair to everybody in the whole process and those who come behind us. So that's the issue that you need to get to with regard to Myers. Now, Mr. Gann, this is one of the most honorable, remarkable arguments I have seen in 26 years as a judge. Also one of the oddest. It's not odd to me at all. Well, the odd part I've heard before. One of the answers to Judge Duncan's earlier question that she started with with you, and I have seen it, it's not unprecedented. What happens, unfortunately, in many of these pro se cases, whether they're habeas or discrimination cases, is with all respect, I was a district judge. Judge Floyd was a district judge. We know how it works. And Judge Duncan, though she wasn't a district judge, also knows how it works. These district judges are burdened. They want to move the cases along. God bless them, and they should. But there's a risk when you dismiss a case, whether under an IFP or when you don't hear from the other side, you forego the opportunity to have the wisdom that you've brought to us this morning inform your decision-making. And so I have seen it. And so very few lawyers in your position want to show up in court the first time in a case on appeal. What you're telling us is that you would have liked the opportunity, rather than have Judge Hudson dismiss this thing out of hand, sua sponte, you would have preferred to have had the opportunity for your client to appear before Judge Hudson, make an argument, raise this Myers point, which he, for whatever reason, just didn't think about, and he would have dismissed this complaint without prejudice, with leave for counsel to make an appearance, and Ms. Shuler and her family and her supporters would have had 30 days or 60 days to see if they could get a pro bono lawyer to come in and do what you're exactly telling this court the court is entitled to have done, and that is to have a full adversarial process, honing the issues, so that, as you say, the Richmond School Board and everybody else really understands, as you put it so well, what the facts are, how the law applies to those facts, and not run the risk of you ending up on First Street, D.C., not physically, but having to file papers, and one of those bright law clerks up there looking at this thing and said, My goodness, this is a mess. We send it back to the Fourth Circuit, and the Fourth Circuit says, You know, that's what you're trying to avoid. And I think that, as an officer of the court, you're doing us a big favor by the candor that you brought to your argument, and I just want to salute you for that. Well, Your Honor, I've been, I've got to tell you, this is the first time I've ever been in a case where we didn't even know it was filed. Believe me, it happens up here all too often, all too often. All of a sudden, I'm told, Hey, you've got this case in the Fourth Circuit, and I'm thinking to myself, You know, I must have slept through the district court. I evidently didn't make it. I don't even remember. You know, I've got a heavy docket, but I don't remember being there. And so, you know, knowing the court, knowing that the 12B6 motion would have been filed, and frankly, based upon what Judge Hudson has written, I think the 12B6 motion would have been resolved in our favor, and I think we're standing here in a different posture. But you don't have any doubt, do you, that a lawyer would have filed an amended complaint in response to your first 12B6 motion, right? I have none. That's exactly the way it works. But I don't think it would have mattered. Because you can file an amendment. It may not. And you may well be right about that. But a lawyer, with the benefit of argument against the first complaint, because under Rule 15 he has an automatic right to file an amended complaint before an answer, would file an amended complaint in an effort to cure whatever deficiencies you would have pointed out. That's how good lawyers operate. Well, and it's easier with good lawyers. Absolutely. But, you know, the thing that's interesting about it is that although Judge Hudson didn't specifically take on the issue of sex stereotyping and, you know, are we reading this the correct way after Price Waterhouse and the like, the Spearman case that he cited did, and it did clearly say that all sex stereotyping is is an evidentiary rule to get to a sexual discrimination verdict. It's not a form of discrimination other than the evidence of. You know, and in Price Waterhouse that was a classic example. Well, you don't want to argue Title IX. You want to send it back and get the facts straight, don't you? I do. And if it doesn't, you know, but. You'll just win again there. Pretty sure of that. In a trial. Pretty sure of that. And I think from this standpoint, you know, and I don't mean to sound, I guess the way that sounded. But nonetheless, aren't we going to be better off when we can spend the 20 minutes apiece not worrying about a Myers issue? Aren't we really going to have a much better debate about where the law is going, what the statute says, and where this court ought to be and where this circuit ought to be in that situation? I think you've provided a great deal of fodder for rebuttal. Just not to say, no, please. But I'm really interested to hear what is said on rebuttal since MD wasn't asking for a chance to amend the complaint. I did not mean to cut you off. Do you have anything else? Do you have anything else? No, other than, you know, it's not a. I guess if under Title IX, just simply that the circuit doesn't recognize sexual orientation discrimination, and Judge Hudson was right. And, you know, from that standpoint, it seems to me that there really are only two choices with all due respect. It's either send it back and get it correct or affirm and say, you know, you're right, there isn't sexual orientation discrimination here and there isn't. That's a matter of law. I guess we could do that. You could do that. And that's what happened in the previous decisions on Myers' issues, if it is a matter of law. But it's difficult when the appellant is standing here saying. That the complaint's confused. Yeah. So you really are in a difficult spot there. And I don't think the facts necessarily change. But I do think that we're able to look at it and make sure that we know what it is that the plaintiff is telling us occurred so that we can then say, you know, sorry, but this isn't deliberate indifference under the law and the circuit. And there is no sexual orientation discrimination here. Thank you very much. Thank you. Mr. Wren, I can hardly wait. The reason why we are standing here today is not because of inartful drafting. And I would encourage this court to go back to district court opinion and to look for any indication that the reason why Judge Hudson dismissed the complaint was because of inartful drafting. You will not find it. If you go back to the decision, the two reasons that he gave for why the complaint was worthy of dismissal was that, first of all, the Title IX claim is based on students' incorrect perception of plaintiff's sexual orientation, not his gender. That's the first reason. The second reason that Judge Hudson gave was that because plaintiff transferred schools within days of Principal Cruz expressing her willingness to develop an appropriate plan of action, it cannot be said that she acted in a clearly unreasonable manner. Well, is it in your best interest to send this case, to send this back and risk losing it again? Both parties, it is now clear, agree that this court should remand for further proceedings to the district court. The question and the dispute that remains is whether this court should nevertheless analyze whether these two reasons for Judge Hudson's dismissal were correct or not. You lost. I'm sorry. No, you follow up. That's the whole danger here, is that we wander out there into the Title IX field on a bad complaint, and then it'll come back to bite us. Because you want us to affirm. I mean, you want us to reverse and say your theory of the law is correct, and you want us to say that on these facts. Isn't that right? That's correct, Your Honor. This is not an inartfully pled complaint. In the great run of pro se complaints, this is not a bad one by any stretch. It's actually a pretty impressive one. It's extensive. It's comprehensive. I agree with you. It's not by any stretch one of the worst complaints I've ever seen. And I think counsel said that the complaint was confused. We disagree absolutely with that characterization. The confusion. I thought you said that perhaps you didn't use the word confused, but you did indicate that we have to decide how to read it. There are points at which, although I'm sorry, that goes to the deliberate indifference point. Our point is that the defendant mischaracterized the complaint, as every defendant does in every motion to dismiss posture. The complaint itself is quite clear. There is no ambiguity about whether it plausibly states a claim for all the elements under Title IX and Title VI. Do you think a district court judge benefits from the adversarial process when he or she has a couple of lawyers representing clients on both sides, presenting legal arguments, even on a 12B6 motion? It is always going to be the case that the district court's job is easier in a counsel's case. But this court in Edwards, and in many other cases, has said that it is always going to require a greater burden on district court judges to read pro se complaints. But as the appellees say, this pro se complaint is a nullity. It's not a nullity. It's a nullity under Myers. Ms. Shuler could not represent her son as a non-attorney. You don't doubt the existence of that rule of law in this circuit, do you? Judge Davis, appellee's counsel did not provide you a single reason for why Myers was indistinguishable. Judge Duncan outlined the two factors that are required to decide an appeal, even when a minor at the district court is unrepresented. And those requirements are, first, that there is counsel who enters an appearance. I'm sorry to interrupt again, but you would rather lose on the merits. I'm not saying you will. But you think Myers should be read to mean an uncounseled minor who gets a fair appeal on an arguably flawed complaint than going back and taking the opportunity the court affords him or her through his or her next friend to get pro bono counsel. Which, of course, is not what Myers said. Judge Davis, we understand that there is a risk by asking this court to rule on the merits of the case. It is a risk that we assume. And I should mention that the person. Is it a risk that MD assumed? Yes. Through counsel. The counsel for the minor is the person who is best situated. And with all due respect, not this court to decide whether or not it is in his best interest for the appeal to be decided. Back to my first question. In order for you to prevail, we've got superimposed the length, the title seven law in the title nine when the two statutes are somewhat different in what they say about sex. So that's what we're worried about. The law is incontrovertible on this point. That sex stereotyping is prohibited under title nine. The cases are legion holding that it does not require any stretch for this court to hold that price Waterhouse, which yes, title seven case informed the title nine discussion. That is a non-controversial proposition and defendants haven't even attacked it. The point is you still aren't willing to say you'll represent MD in the district court. We're asking for the opportunity for an attorney to enter an appearance at the district court level. As I mentioned, both of us agree that this case should go back. The question is whether it should go back without any instruction about the district court's analysis for why the complaint was wrong. It would be a real travesty for this case to ping pong back and forth between the district court and the fourth circuit. If judge Hudson, as he explained in an 11 page decision says, yep, even after many complaints, the reasons that I outlined are still going to warrant dismissal and we'll be back here again in the future. Unless this court, unless this court corrects or affirms judge Hudson's legal views. Those are questions of law that this court is entitled to address. Thank you, your honor. Thank you. We will come down Greek council and proceed directly to the next case.
judges: Allyson K. Duncan, Andre M. Davis, Henry F. Floyd